UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


SANDRA GRANT                                                    PLAINTIFF


VS.                                    CIVIL ACTION NO. 3:10CV164TSL-FKB


EATON DISABILITY LONG-TERM
DISABILITY PLAN                                                 DEFENDNAT


MEMORANDUM OPINION AND ORDER

Plaintiff Sandra Grant filed this action against defendant
Eaton Corporation Long-Term Disability Plan claiming that she was
denied long-term disability benefits to which she was entitled, in
violation of the Employee Retirement Income Security Act of 1974,
29 U.S.C. § 1001 *et seq.*  The case is presently before the court
on cross-motions for summary judgment filed by the parties.  Each
party has responded to the other's motion and the court, having
considered the memoranda of authorities, together with
attachments, submitted by the parties, concludes that defendant's
motion should be granted and plaintiff's motion denied.

Facts

Plaintiff became employed by Eaton Corporation in September
1981, and remained employed by the company until her termination
in August 2003.  While employed by Eaton, plaintiff was covered
under the Eaton Corporation Disability Plan for U.S. Employees,
which included a Short-Term Disability Plan (STD Plan) and a Long-

Term Disability Plan (LTD Plan).  Eaton Corporation is the Employer, Plan Administrator and Plan Sponsor of the Eaton LTD Plan.

At some point, plaintiff was diagnosed with degenerative disk disease, which she contends forced her to stop working beginning September 25, 2002.  She applied for benefits under the Eaton STD Plan, but her claim was denied on November 7, 2002, since plaintiff failed to present the necessary proof to support her claim.  Her appeal of this decision was denied on January 28, 2003, and she did not seek further review of this decision.

Plaintiff returned to work on March 13, 2003, after being released to return to work, with restrictions, by her chiropractor and physician.  She worked continuously until August 12, 2003, when Eaton notified her that she was being terminated, effective immediately, based on performance deficiencies.

Soon after her termination, plaintiff applied for Social Security Disability benefits.  By letter dated September 10, 2006, the Social Security Administration (SSA) notified Grant that it had found her disabled from substantial gainful employment, with an effective disability onset date of August 12, 2003.  More than a year later, on October 15, 2007, plaintiff wrote to Eaton's LTD Plan Claims Administrator,[1] advising she had been approved for

---

[1]     Sedgwick CMS was Claims Administrator of the Eaton LTD Plan.

2

Social Security Disability benefits and requesting an application for LTD benefits under the Eaton LTD Plan.  An application was provided, and on December 25, 2007, plaintiff filed an application for LTD benefits, noting thereon her Social Security Disability ruling effective August 12, 2003, and asserting a disability onset date of September 2002 due to multiple conditions, as follows: "Fibromyalgia (Arthritis), Stress, Chronic Fatigue Syndrome, High Blood Pressure & Stress), Back Strain and Depression."

On June 12, 2008, Eaton, through its Claims Administrator, notified plaintiff her claim was denied, effective March 26, 2003, for the reason that plaintiff had not satisfied the six-month waiting period required by the plan in order to be eligible for LTD benefits.  The denial notice recited:

> Your eligibility for benefits under the Plan was determined under the following Plan provision(s):
>
> "Long term disability payments begin on the day immediately following a six-month period during which you have been absent from work due to a covered disability.  The waiting for the start of the LTD benefits begins on the day you become disabled and continues for six months."
>
> This determination is based on the fact that your absence did not exceed the six month waiting period required for disability benefits under the Eaton Corporation Long Term Disability Plan.  Your first day of absence was September 25, 2002 and your Short Term Disability claim was denied effective September 25, 2002.

Plaintiff appealed, and was advised by letter of September 9, 2008 that her appeal was denied, and LTD benefits were not payable, for essentially the same reason as given initially:

> Our records indicate your first day of absence was September 25, 2002, and your Short Term Disability benefits were denied September 25, 2002. As you did not receive six (6) months of approved disability payments to satisfy the long-term disability waiting period, you are not eligible to receive long term disability benefits.

Plaintiff sought reconsideration, and a decision was rendered on March 16, 2009 on this final level appeal, which reiterated the reason previously given for denial of her claim:

> Although you were absent from September 25, 2002 to March 12, 2008, your STD benefits were denied for this time period. This does not represent a continuous period of disability since your benefits were denied and you returned to work.

However, a second reason was added:

> [T]he forms to receive benefits from the [LTD] Plan must be completed and returned to the Claims Administrator within one year of the last day of your active work with the company. In your case, this date would have been August 29, 2004.

Plaintiff filed the present action on March 16, 2010, asserting her claim for benefits under Eaton's LTD Plan was wrongly denied.

Defendant has moved for summary judgment, contending plaintiff is not entitled to benefits under the LTD Plan because she was not covered under the Plan and/or is otherwise ineligible for benefits under the terms of the Plan. It urges in support of

4

its motion that plaintiff is not entitled to benefits both for the
reasons previously identified during the administrative review
process, i.e., that she did not satisfy the six-month waiting
period since she was not continuously disabled for six months
commencing September 25, 2002, and that she failed to timely file
her application for LTD benefits, and for additional reasons, as
follows:  that at the time she filed her application for benefits,
plaintiff was not eligible for coverage since her eligibility
ended on the last day of her employment; and that because
plaintiff returned to work for more than five months after a
period of claimed short-term disability, then under the terms of
the LTD Plan, her claim for LTD benefits was not an extension of
her earlier-claimed short-term disability but rather was a "new"
disability for which she did not satisfy the six-month waiting
period.

Standard of Review

"Where a benefits plan 'gives the administrator or fiduciary
discretionary authority to determine eligibility for benefits or
to construe the terms of the plan,' as [Eaton's] plan does here,
the reviewing court applies an abuse of discretion standard to the
plan administrator's decision to deny benefits." Anderson v.
Cytec Indus., Inc., 619 F.3d 505, 512 (5th Cir. 2010) (quoting
Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.
Ct. 948, 103 L. Ed. 2d 80 (1989)).  "This is the functional

5

equivalent of arbitrary and capricious review: '[t]here is only a semantic, not a substantive, difference between the arbitrary and capricious and the abuse of discretion standards in the ERISA benefits review context.'" Id. (quotation omitted).  "[T]he plan administrator's decision to deny benefits (also) must be supported by substantial evidence," id. (citation omitted), which is defined as "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," id. (quotation omitted).

In addition, the court "must take into consideration the conflict of interest inherent in a benefits system in which the entity that pays the benefits–here, [Eaton]–maintains discretionary control over the ultimate benefits decision." Id. (citing Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 128 S. Ct. 2343, 2348-51, 171 L. Ed. 2d 299 (2008)).  The Fifth Circuit has held that this does not mean that there is a heightened standard of review when such a conflict of interest exists, but the court must "weigh the structural conflict as one of the many factors relevant to the benefits determination decision." Id. (citing Glenn, 128 S. Ct. at 2351).

Full and Fair Review

Under 29 U.S.C. § 1133, every employee benefit plan must:

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the

6

> specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

The purpose of § 1133 is "'to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial.'" Lafleur v. Louisiana Health Service and Indem. Co., 563 F.3d 148, 154 (5th Cir. 2009) (quoting Schneider v. Sentry Long Term Disability, 422 F.3d 621, 627-28 (7th Cir. 2005)).  In view of this purpose, courts, including the Fifth Circuit, have consistently held that to satisfy this requirement of "full and fair review," judicial review must be "limited to whether the rationale set forth in the initial denial notice is reasonable." Thompson v. Life Ins. Co. of N. Am., 30 Fed. Appx. 160, 164 (4th Cir. 2002) (unpublished).  Thus, the court found in Robinson v. Aetna Life Insurance Co. that Aetna violated § 1133 when it initially gave the claimant one reason for terminating his benefits, but upon review, changed its reasoning, and informed the claimant for the first time in its review letter that it had determined his benefits should be terminated for a different reason.  443 F.3d 389, 393 (5th Cir. 2006).  The court held that "section 1133 requires an administrator to provide review of the specific ground for an adverse benefits decision," id. at 393, explaining as follows:

7

Subsection (1)'s mandate that the claimant be specifically notified of the reasons for an administrator's decision suggests that it is those "specific reasons" rather than the termination of benefits generally that must be reviewed under subsection (2).  See McCartha v. Nat'l City Corp., 419 F.3d 437, 446 (6th Cir. 2005) (holding that an administrator failed to substantially comply with section 1133 where the initial notice of termination failed to state one of the grounds on which it ultimately relied).  Furthermore, this Court has previously read the two subsections of section 1133 as complementing each other.  In Schadler v. Anthem Life Insurance, this Court explained that "the requirement that the administrator disclose the basis for its decision is necessary so that beneficiaries can adequately prepare for any further administrative review ...." 147 F.3d 388, 394 (5th Cir. 1998) (internal punctuation omitted).  The notice requirements of ERISA help ensure the "meaningful review" contemplated by subsection (2).  Id. (quoting Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 689 (7th Cir. 1992)); see [Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771, 775 (7th Cir. 2003)] (stating that effective review requires "a clear and precise understanding of the grounds for the administrator's position").  Additionally, mandating review of the specific ground for a termination is consistent with our policy of encouraging the parties to make a serious effort to resolve their dispute at the administrator's level before filing suit in district court.  See Vega v. Nat'l Life Ins. Serv., Inc., 188 F.3d 287, 300 (5th Cir. 1999) (en banc).  Thus, Aetna failed to comply with section 1133(2) when it terminated Robinson's benefits without reviewing the specific ground for that decision.

Id.

In Robinson, § 1133 was found to have been violated because Aetna changed its reason for denial at the final appeal level.  On the same reasoning, the court, in Lafleur v. Louisiana Health Service and Indemnity Co., found that "Blue Cross did not substantially comply with the procedural requirements of ERISA

8

because ... it raised new grounds for denial in the federal courts
that were not raised at the administrative level."  563 F.3d 148,
154-55 (5th Cir. 2009).  The court observed that the alternate
reasons for denial offered to the court

> may or may not be legitimate, but the fact remains that
> these were not the reasons for denial given at the
> administrative level.  To ensure the full and fair
> review contemplated by ERISA, the specific reason or
> reasons for denial must be clearly identified at the
> administrative level in order to give the parties an
> opportunity for meaningful dialogue.  See Robinson, 443
> F.3d at 393.  Although these various reasons for denial
> are all generally based on the Custodial Care exclusion,
> the lack of specificity in the denial letters did not
> give Lafleur the fair notice contemplated by the ERISA
> regulations.  See 29 C.F.R. § 2560.503-1(g)(i); see also
> McCartha v. Nat'l City Corp., 419 F.3d 437, 446 (6th
> Cir.2005) ("[D]efendants were not in substantial
> compliance with the requirements of § 1133 because
> McCartha was never timely informed that the failure to
> provide current medical opinions as to her long-term
> disability would be *one of the bases* for the termination
> of her benefits.") (emphasis added).

Id. at 155-56.  See also Hall v. Metropolitan Life Ins. Co., 259
Fed. Appx. 589, 592-594, 2007 WL 4553952, 3 (4th Cir. 2007)
(holding that "[a] court may not consider a new reason for claim
denial offered for the first time on judicial review."); Abatie v.
Alta Health & Life Ins. Co., 458 F.3d 955, 974 (9th Cir. 2006)
(holding that "[w]hen an administrator tacks on a new reason for
denying benefits in a final decision, thereby precluding the plan
participant from responding to that rationale for denial at the
administrative level, the administrator violates ERISA's
procedures").

9

Analysis

As in Robinson and Lafleur, Eaton's violation of § 1133 is apparent.  In its initial denial notice, and its first-level appeal, Eaton cited a single reason for denial:  that Grant's absence from work from September 25, 2002 to March 13, 2003, for which she had not been approved for STD benefits, did not satisfy the six-month waiting period.  However, even under an arbitrary and capricious standard of review, the court must conclude this was not a valid basis for denial of Grant's claim.

The Eaton LTD Plan provides, in relevant part,

Successive periods of disabilities:
The waiting period for the start of LTD benefits begins on the day you become disabled and continues for six months.  During that time, you may be eligible for benefits under a Company short term disability program.

If you return to work before LTD benefits payments begin.  If you return to work for three months or less during the six-month waiting period before LTD payments begin, you do not have to satisfy a new six-month waiting period – provided the second period of disability from the same cause or a cause related to the first disability.  The days you are at work do not count as part of the six-month waiting period.

*The waiting period is handled differently if you return to work for longer than three months or you experience a disability from a second, unrelated cause.  In that case, you are considered to have a new disability.  The six-month period starts again with the new disability.*
(Emphasis added).

The record clearly shows that following her five-and-a-half month absence from work from September 25, 2002 to March 13, 2003, plaintiff "returned to work for longer than three months."

10

Consequently, under the terms of the LTD Plan, she was "considered to have a new disability."  Thus, the fact that she had not been absent from work a full six months from and after September 25, 2002, and/or that she had not been found entitled to STD benefits for that period of absence, was irrelevant to the question whether she was eligible for disability benefits based on a "new" disability commencing August 12, 2002.

The issue thus arises as to the appropriate remedy for Eaton's procedural violation of § 1133 by "tacking on" additional reasons for denial in the final-level appeal and in this judicial proceeding.  In <u>Lafleur</u>, in undertaking to identify the scope of available remedies, the Fifth Circuit held that "[r]emand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA."  <u>Id</u>. (citations omitted).  The court explained,

> This position is consistent with the default rule of other circuits and our pronouncement in [<u>Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan</u>, 493 F.3d 533 (5th Cir. 2007)] that procedural violations of ERISA generally do not give rise to a substantive damages remedy.  When the procedural violations are non-flagrant, remand is typically preferred over a substantive remedy to which the claimant might not otherwise be entitled under the terms of the plan.  <u>See</u> [<u>Gagliano v. Reliance Standard Life Ins. Co.</u>, 547 F.3d 230, 240 (4th Cir. 2008)]; <u>see also</u> <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) ("ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect *contractually defined benefits*.") (emphasis added) (citation omitted).

11

<u>Id</u>. at 157-58.  However, the court identified two exceptions to
this default rule.  One is "'where the record establishes that the
plan administrator's denial of the claim was an abuse of
discretion as a matter of law.'"  <u>Id</u>. at 158 (quoting <u>Gagliano</u>,
547 F.3d at 240).  The court stressed this is a narrow exception,
stating:

> "A remand for further action is unnecessary only if the
> evidence clearly shows that the administrator's actions
> were arbitrary and capricious, or the case is so clear
> cut that it would be unreasonable for the plan
> administrator to deny the application for benefits on
> any ground." <u>Caldwell</u>, 287 F.3d at 1289 (internal
> citations and quotation marks omitted).  If the
> administrative record reflects, at minimum, a colorable
> claim for upholding the denial of benefits, remand is
> usually the appropriate remedy.  <u>See</u> <u>Gagliano</u>, 547 F.3d
> at 240.

<u>Id</u>.

Another exception the court recognized is "where remand would
be a useless formality."  <u>Id</u>. at 158 n.22.  The court noted:

> An administrator's failure to substantially comply with
> the procedural requirements of ERISA will usually
> prevent a plaintiff from adequately developing the
> administrative record and presenting his arguments, so
> this futility exception should be narrowly construed and
> sparingly applied.  The court might find that remand
> would be a useless formality where "much, if not all,
> the objective [] evidence supports the conclusion that
> [the] plaintiff [is not covered under the terms of the
> policy]."  <u>See</u> <u>Kent v. United of Omaha Life Ins. Co.</u>, 96
> F.3d 803, 807 (6th Cir. 1996).  In making this
> determination, the court should consider not only the
> evidence in the administrative record, but also the
> evidence that the plaintiff would have submitted but for
> the administrator's procedural violations.  The
> administrator should not be allowed to hinder the
> development of the administrative record through its
> procedural violations, and then invoke the futility

12

exception based solely on the limited evidence contained within that record.

Id.[2]

In the present case, Eaton belatedly asserted a number of bases for denial of benefits, in addition to the reason originally assigned for its decision.  While the same cannot be said of all these reasons, in the court's opinion, one of these reasons is so manifestly well-grounded based on the "objective evidence" that remand "would be a useless formality."  That is, it is clear that under the terms of Eaton's LTD Plan, Grant's application for LTD

_____

[2]    The court in Lafleur considered but rejected the claimant's suggestion of changing the standard of review from a deferential abuse of discretion standard to de novo review as a potential remedy for the administrator's violation of § 1133, noting that while it had "never definitively rejected the availability of this remedy, [it had] previously refused to apply it[,]" id. (citing Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan, 493 F.3d 533, 538 (5th Cir. 2007), and noting further that even the Ninth Circuit, which had approved such a remedy, reserved its use for flagrant procedural violations, which was not the case with Aetna's procedural error.  Id.
     The court identified two other remedies that it noted were supported by persuasive precedent:  striking evidence, id. at 160 (citing Bard v. Boston Shipping Ass'n, 471 F.3d 229, 244-46 (1st Cir. 2006) (where "procedural irregularities [] were serious, had a connection to the substantive decision reached, and call[ed] into question the integrity of the benefits-denial decision itself," court struck evidence supporting denial and awarded benefits to the plaintiff based on the remaining evidence); and retroactively reinstating benefits, id. (citing Wenner v. Sun Life Assurance Co. of Canada, 482 F.3d 878, 883-84 (6th Cir. 2007), and Schneider v. Sentry Group Long Term Disability Plan, 422 F.3d 621, 629-30 (7th Cir. 2005), where the respective courts held that retroactive reinstatement of benefits was an appropriate remedy for procedural violations in cases where the administrators had terminated benefits that had already been granted).
     None of these potential remedies is implicated by the circumstances of the case at bar.

13

benefits was untimely.  The Plan explicitly establishes a "filing deadline," stating,

> The forms to receive benefits under the Long Term
> Disability Plan must be completed and returned to the
> Claims Administrator within one year of your last day of
> active work with the Company.  If you do not meet this
> filing deadline, you will not be eligible to receive
> long term disability benefits.

Plaintiff was terminated effective August 12, 2003, and was paid through August 30, 2003.  "Active work" is not defined, but obviously, plaintiff's "last day of active work" was no later than August 30, 2003.  Accordingly, she had until August 29, 2004 to submit a claim for LTD benefits in order to be eligible to receive such benefits.  She did not file her application until December 25, 2007, more than three years after the last possible date on which she could have made a timely claim.

In her response to defendant's motion, Grant does not offer any evidence to show that she filed (or even attempted to file) a claim for benefits on or before August 29, 2004.  Had any such claim been filed, presumably there would be evidence of it in the record, or plaintiff would have offered such evidence to the court.  She has not done so.  Nor has she suggested how her claim, which by both plaintiff's and defendant's accounts was first filed on December 25, 2007, could possibly be considered timely under the terms of the Plan.  Under these limited circumstances, the court considers that remand is unnecessary and concludes that defendant is entitled to summary judgment.  See <u>Horn v. Owens-Ill.</u>

Employee Benefits Committee, 2011 WL 1664443, 3-4 (5th Cir. May 2, 2011) (ERISA plan participant's claims for disability benefits following SSA award of benefits held untimely where plan required that claims be filed within twelve months of last day worked, and claimant did not make his first claim following SSA award until nearly three years after his last day of work).

Accordingly, based on the foregoing, it is ordered that plaintiff's motion for summary judgment is denied, and it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 24th  day of June, 2011.


                                    /s/ Tom S. Lee
                                    UNITED STATES DISTRICT JUDGE

15