UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SANDRA GRANT                                                    PLAINTIFF

VS.                                         CIVIL ACTION NO. 3:10CV164TSL-FKB

EATON DISABILITY LONG-TERM
DISABILITY PLAN                                                 DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff Sandra Grant for leave to amend her original complaint to add Eaton Corporation as a party under Federal Rule of Civil Procedure 16.[1]  Defendant Eaton Corporation Long-Term Disability Plan has responded in opposition to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes the motion to amend should be granted.

Plaintiff was employed by Eaton Corporation from 1981 until her termination in August 2003.  During her employment with Eaton, plaintiff was covered under the Eaton Corporation Long-Term Disability Plan for U.S. Employees.  Eaton Corporation is the Employer, Plan Administrator and Plan Sponsor of the Eaton LTD

---

[1] Plaintiff advises in her rebuttal memorandum that she moved to amend to name Eaton Corporation Health and Welfare Administrative Committee (Committee) because she mistakenly thought the Committee was the plan administrator.  As she now understands that Eaton Corporation is the plan administrator identified in the plan documents, she advises that she seeks to amend to add Eaton Corporation as the plan administrator.

Plan. Soon after her termination, plaintiff applied for Social Security Disability benefits claiming she was disabled as of August 12, 2003 (the date of her termination) due to multiple conditions, including "Fibromyalgia (Arthritis), Stress, Chronic Fatigue Syndrome, High Blood Pressure & Stress), Back Strain and Depression." By letter dated September 10, 2006, the Social Security Administration (SSA) notified plaintiff that it had found her disabled from substantial gainful employment, with an effective disability onset date of August 12, 2003.

More than a year later, on October 15, 2007, plaintiff wrote to Eaton's LTD Plan Claims Administrator, Sedgwick Claims Management Services, Inc. (Sedgwick), advising she had been approved for Social Security Disability benefits and requesting an application for LTD benefits under the Eaton LTD Plan. Sedgwick provided an application, and in December 2007, plaintiff filed an application for LTD benefits, noting thereon her Social Security Disability ruling. On June 12, 2008, Sedgwick notified plaintiff her claim was denied. Thereafter, on March 16, 2010, following denial of her claim for reconsideration, plaintiff filed the present action asserting her claim for benefits under Eaton's LTD Plan was wrongly denied.

On June 24, 2011, this court granted summary judgment in favor of the Plan, finding that the denial of benefits was proper because plaintiff's "application for LTD benefits was untimely."

Plaintiff moved to reconsider and on December 13, 2011, the court entered its order denying plaintiff's motion to the extent plaintiff sought judgment in her favor but ordering the case remanded based on a "procedural violation." Specifically, the court held that plaintiff had been denied the "full and fair review" to which she was entitled, see 29 U.S.C. § 1133, since she had not been afforded the opportunity in the administrative proceeding to present her contention that the one-year deadline for filing claims had been waived.[2]

Thereafter, on June 27, 2012, the Committee issued its final determination on remand in which it found that "under the terms of the Plan, as they apply to Ms. Grant, the one-year deadline was not waived." The Committee found that plaintiff had failed to submit evidence demonstrating that the Plan's one-year requirement was waived. Accordingly, the Committee upheld the denial of benefits on remand.

On July 27, 2012, plaintiff filed the present motion, requesting leave to amend her complaint to assert a cause of action for penalties under 29 U.S.C. § 1132(c)(1) against Eaton Corporation, the plan administrator, for its putative failure to

---

[2] The court's order stated, "[T]he matter is remanded to the plan administrator for further review regarding the denial of benefits, and in particular regarding plaintiff's assertion that the one-year filing deadline was waived."

provide her with certain documents pursuant to what she contends was a request under 29 U.S.C. § 1024(b)(4).  Specifically, plaintiff alleges in her proposed amended complaint that in connection with the claims review process following remand by the court, she made repeated requests for "Administrative Services Agreement between Sedgwick [Claims Management Services, Inc.] and Eaton" and a "claims manual that Sedgwick uses when adjusting Eaton disability claims," and yet these documents were not provided.  Defendant Eaton LTD Plan contends plaintiff's motion should be denied on the basis of futility since plaintiff's proposed amended complaint fails to state a claim upon which relief can be granted.  See Stripling v. Jordan Production Co., LLC, 234 F.3d 863, 872–73 (5th Cir. 2000) (stating that "[i]t is within the district court's discretion to deny a motion to amend if it is futile," meaning "that the amended complaint would fail to state a claim upon which relief could be granted").

Pursuant to 29 U.S.C. § 1024(b)(4), the administrator of a plan has an obligation to produce to a plan participant certain documents upon her request:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[ ] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. ...

29 U.S.C. § 1024(b)(4).  This obligation is enforceable through 29 U.S.C. § 1132(c)(1)(B), which provides that an administrator who fails to comply with a request for such documents within thirty days "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to [$110] a day[3] from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."  29 U.S.C. § 1132.

In its response, defendant first contends that plaintiff has no cognizable claim against Eaton for its purported failure to provide the requested documents since the documents plaintiff requested are not subject to the requirements and penalties attributable to § 1024(b)(4).  The documents plaintiff sought were not the plan summary, plan description, an annual report or terminal report, or a bargaining agreement or trust agreement.  The question, then, is whether either of the documents she requested qualifies as a contract or other instrument "under which the plan is established or operated."  Courts that have considered the issue have consistently held that claims manuals or guidelines for processing claims are not covered by § 1024(b)(4).  See, e.g., Brown v. J.B. Hunt Transport Servs., Inc., 586 F.3d 1079,

---

[3] The statute provides for a penalty of up to $100 per day.  This has been raised to $110 per day by regulation.  See 29 C.F.R. § 2575.502c-3.

1088-1089 (8th Cir. 2009) (holding that "claims manuals are not the 'other instruments' mentioned in § 1024(b)(4)"); Castro v. Hartford Life and Acc. Ins. Co., No. 5:11-cv-446-Oc-34TBS, 2011 WL 4889174, 6 (M.D. Fla. Oct. 14, 2011) (concluding that claims manuals and guidelines not covered by § 1024 since plain text of the statute "refers only to the formal legal documents governing a plan, and does not refer to claims-related documents"); Black v. Pitney Bowes Inc., No. 05 Civ. 108(GEL), 2008 WL 3992306, 11 (S.D.N.Y. Aug. 26, 2008) (concluding that "Policies and Procedures Manual" which set forth internal procedures to guide the processing of disability claims was "not one of the documents set forth in Section 1024(b)(4)"); Brucks v. Coca-Cola Co., 391 F. Supp. 2d 1193, 1210-11 (N.D. Ga. 2005) (rejecting claim for section 1132(c) penalties in connection with administrator's failure to supply requested "claims manuals" and "claims guidelines" because such documents are not "plan documents required to be provided under Section 1024").

The Administrative Services Agreement is another matter, however.  In a number of cases, courts have held that an administrative services agreement between a plan and claims administrator is not covered by § 1024((b)(4).  See, e.g., Hively v. BBA Aviation Ben. Plan, 331 Fed. Appx. 510, 511, 2009 WL 2431368, 1 (9th Cir. 2009) (finding that Administrative Services Agreement between the Plan and United Health Care (UHC) did not

fall within the documents subject to disclosure under § 1024(b)(4) since it governed the relationship between UHC and the Plan, not the relationship between the plan participants and the provider; documents that "'relate only to the manner in which the plan is operated' are not subject to disclosure under § 1024(b)(4)") (citing Shaver v. Operating Eng'rs Local 428 Pension Trust Fund, 332 F.3d 1198, 1202 (9th Cir. 2003)); Morley v. Avaya Inc. Long Term Disability Plan For Salaried Employees, D. N.J. No. 04-409, 2006 WL 2226336, *18-19 (Aug. 3, 2006) (holding that a services agreement "between the Plan and the Claims Administrator as to each party's respective duties and obligations … is not a plan document or a document 'under which the plan is established or operated'" under ERISA § 104(b)(4)).  On the other hand, some courts have recognized that there may be circumstances in which an administrative services agreement is subject to disclosure under § 1024(b)(4).  In Michael v. American International Group, Inc., No. 4:05CV02400 ERW, 2008 WL 4279582 (E.D. Mo. 2008), the court wrote at length on the issue, stating, in pertinent part,

> The proper inquiry for the Court to determine whether the contract at issue should have been disclosed is to consider whether the administrative services agreement "allow[s] 'the individual participant [to] know ... exactly where he stands with respect to the plan-what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted." Hughes Salaried Retirees Action Comm. v. Administrator of the Hughes Non-Bargaining

7

Retirement Plan, 72 F.3d 686, 690 (9th Cir. 1995) (quoting S.Rep. No. 93-127(1974)).

The Court has not found much guidance from other courts on this issue. Several courts have found that the terms of administrative services agreements cannot be held against a plan participant or administrator because they are not plan documents. See Fritcher v. Health Care Service Corp., 301 F.3d 811, 817 (7th Cir. 2002); Parente v. Aetna Life Ins. Co., 2001 WL 818345, at *7 (E.D. Pa. June 19, 2001). However, this does not automatically result in the conclusion that this document is exempt from ERISA disclosure requirements, because ERISA requires the disclosure of "the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).

A more persuasive rationale was used by the District of New Jersey, when the court found that an administrative services agreement was not a formal plan document because it did not "describ[e] health benefits; rather the ASA merely memorialized the obligations [the contracting parties] owed to each other." Local 56, United Food and Commercial Workers Union v. Campbell Soup Co., 898 F. Supp. 1118, 1136 (D.N.J. 1995). However, the Court notes that while it has not seen the administrative services agreement at issue, Defendants state that it contains a provision that purports to grant discretion and authority from AIG Inc. to Defendant DRMS to determine eligibility for benefits and construe and interpret all terms and provisions of the Group Insurance Policy. As a result, this administrative services contract did more than just memorialize the obligations owed between Defendant AIG Inc. and Defendant DRMS, it also contained information on "who are the persons to whom the management ... of his plan ... have been entrusted." Hughes Salaried Retirees Action Comm., 72 F.3d at 690. As a result, the Court finds that the administrative services agreement was subject to the ERISA disclosure requirements as it is a document "that restrict[s] or govern[s] a plan's operation." Allen, 382 F. Supp. 2d at 1168 ( quoting Shaver, 332 F.3d at 1202).

> Additionally, the Court notes that the Eleventh Circuit has found that administrative services contracts may be subject to disclosure under ERISA not just as "other instruments under which the plan is established or operated" but as a "contract" pursuant to 29 U.S.C. § 1024(b)(4). <u>Heffner v. Blue Cross and Blue Shield of Alabama, Inc.</u>, 443 F.3d 1330, 1343 (11th Cir. 2006). The Eleventh Circuit succinctly stated that "[a] contract between a group and an insurer such as Blue Cross is specifically listed as an ERISA document which may control a plan's operation." <u>Id.</u> The administrative services agreement at issue before the Court controls the operation of the plan as it purports to grant discretion and authority from Defendant AIG Inc. to Defendant DRMS to determine eligibility for benefits and construe and interpret all terms and provisions of the Group Insurance Policy.

<u>Michael</u>, 2008 WL 4279582, at 5-7.  Cf. <u>Fisher v. Metropolitan Life Ins. Co.</u>, 895 F.2d 1073, 1077 (5th Cir. 1990) (observing that Plan which by its terms contemplated delegation of the named Plan administrator's responsibilities to administer the Plan and to process all claims and appeals procedures and provide other administrative services "arguably incorporat[ed] the Administrative Services Agreement ... as a further delineation of how the Plan would in fact operate").  At this stage, without having seen the Administrative Services Agreement, the court is unable to conclude as a matter of law that the Administrative Services Agreement necessarily falls beyond the purview of § 1024(b)(4).

Defendant next argues that even if a requested document was covered by 1024(b)(4), plaintiff cannot state a claim under § 1132 for penalties for failing to provide any such document since

9

plaintiff's request for such document was made in connection with the claims review process and not as a general participant request for plan details pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4). In the court's opinion, there is no merit to this argument.

As defendant notes, "there is ... a separate statutory provision that may, in conjunction with regulations that the Secretary of Labor has promulgated, entitle a plan beneficiary to copies of the internal guidelines and other documents on which a claims administrator has relied in denying her claim for benefits." Mondry v. American Family Mut. Ins. Co., 557 F.3d 781, 798 (7th Cir. 2009). Specifically, 29 U.S.C. § 1133 provides that "[i]n accordance with regulations of the Secretary, every employee benefit plan shall-... (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." The Secretary's regulations in turn state that a plan will not be deemed to have afforded a claimant "full and fair review" unless, among other things, the claimant was provided "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii). See Mondry, 557 F.3d at 798. A document is deemed "relevant" if it "[w]as relied upon in making the benefit determination" or, in the case

10

of a group health plan, the document "constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination."  § 2560.503-1(m)(8)(i) and (iv); Mondy, 557 F.3d at 798.  As the court explained in Mondy,

> Many items that do not qualify as documents that govern the establishment or operation of a plan for purposes of section 1024(b)(4) may qualify as documents that are relevant to a plan participant's claim for benefits for purposes of section 1133(2) and the Secretary's regulations.  Doe, 167 F.3d at 60-61.  Thus, a participant who is denied access to internal guidelines that relate to her unsuccessful claim for benefits may be able to show that she was denied full and fair review of the denial by the claims administrator.  Id.; Brucks, 391 F. Supp. 2d at 1212 n.18.  Cf. Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 402-03, 406-07 (7th Cir. 1996) (although plaintiff's contention that she was denied a copy of her disability claim file failed to state a claim for statutory penalties under section 1132(c), her allegation that without the claim file she could not identify "pertinent documents" and formulate a meaningful appeal was sufficient to state viable claim that insurance company denied her meaningful access to final administrative review).

Mondry, 557 F.3d at 798-99.  Unlike § 1024(b)(4), "a plan administrator may not be penalized under § 1132(c) for a violation of the regulations to § 1133]".  Brown v. J.B. Hunt Transport Servs., 586 F.3d at 1089.  See also Wilczynski, 93 F.3d at 401 (holding that § 1132(c) "cannot be used to impose civil liability for [a] violation of" § 1133).  However, the mere fact that documents that are subject to disclosure under § 1024(b)(4) may

11

also be subject to disclosure under § 1133 does not absolve the Plan Administrator for liability under § 1132 for failing to produce such documents pursuant to a proper request under § 1024(b)(4). That is to say, nothing in § 1024(b)(4) suggests an exception where covered documents are requested in connection with the review of a claim for benefits.[4]

Defendant next appears to object that there was no proper request for documents under § 1024(b)(4) both because the request was made not by plaintiff herself but by her counsel, who is neither a participant or beneficiary under the Plan, and because the request was directed to counsel for the Plan Administrator rather than the Plan Administrator. The request by plaintiff's counsel on her behalf, if properly directed, is covered by § 1024(b)(4). In <u>Minadeo v. ICI Paints</u>, 398 F.3d 751 (6th Cir. 2005), the court held while a plan administrator may require written authorization from a plan participant before satisfying a non-participant's request for benefits information, "a plan administrator is not entitled to ignore a request for pension

---

[4] Defendant argues at length in its response that the documents at issue were not relevant to plaintiff's claim for benefits. However, an objection that a document is not relevant to the claim for benefits is pertinent to an inquiry under 29 U.S.C. § 1133 and C.F.R. § 2560.503-1(h)(2)(iii), not to the inquiry whether a document is subject to disclosure under 29 U.S.C. § 1024(b)(4) and penalties for non-disclosure under 29 U.S.C. § 1132.

12

benefits information made by an attorney on behalf of a participant." Id. at 758. The court determined that

> a plan administrator must either provide the requested information directly to the plan beneficiary..., or must ... inform the attorney that the information will be released upon the receipt of an authorization signed by the plan participant. A plan administrator who fails to take either of these steps within the thirty day period imposed by 29 U.S.C. § 1132(c) is subject to the fines authorized by that same provision, at the discretion of the district court.

Id. See also Daniels v. Thomas & Betts Corp., 263 F.3d 66, 77 (3d Cir. 2001) (holding that "a representation by an attorney that he is making a request on behalf of a participant or beneficiary triggers the duty to respond under § 1024(b)(4) when the administrator has no reason to question the attorney's authority. In the rare case where the administrator has reason to question that authority, it can respond by requesting further evidence. The objective of the statute would be ill served, however, by permitting administrators to refuse to respond with no indication that authority is even an issue."); Kellogg v. Metropolitan Life Ins. Co., 549 F.3d 818, 827 (10th Cir. 2008) (finding that plan administrator "clearly had a responsibility under ERISA to provide [participant's] counsel with a copy of the latest SPD and plan documentation" under § 1024(b)(4)); Rust v. Electrical Workers Local No. 26 Pension Trust Fund, No. 3:10-CV-00029, 2011 WL 4565501, 20 (W.D.Va. Sept. 29, 2011) (finding administrator liable

13

under § 1024(b)(4) for failing to produce covered documents in response to requests by plaintiff's counsel).

Likewise, defendant's objection that plaintiff's request for documents that was made to the Plan's counsel and not the Plan Administrator is no basis for denial of the motion to amend. Defendant submits that plaintiff's request, through her counsel, was not a valid communication to the Plan Administrator. However, plaintiff alleges in her proposed amended complaint that her request for documents was properly directed to the Plan Administrator. This is a factual allegation which the court, for purposes of the present motion to amend, accepts as true. Furthermore, the court finds unpersuasive defendant's apparent contention that a request for documents directed to counsel for a plan administrator cannot be a proper request under § 1024(b)(4). In Krape v. PDK Labs Inc., 194 F.R.D. 82 (S.D.N.Y. 1999), the court rejected an argument that a plaintiff's claim for penalties under § 1132 should be dismissed because he did not request a copy of the retirement plan from the plan administrator as required by § 1024(b)(4) but instead mailed letters requesting plan information to counsel for the plan administrator. Id. at 87. The court acknowledged that the Second Circuit had not directly addressed the question of whether a letter to the plan administrator's counsel is a proper request for plan information under § 1024(b)(4), though it had recognized in Long Island

14

Lighting Co. v. Becher, 129 F.3d 268 (2d Cir. 1997) that plan participants should be able to access information about the plan administrator's fiduciary duties from the plan administrator's counsel. 194 F.R.D. at 87. The court noted, however, that "the Tenth Circuit has explicitly held that when a participant requests plan information from the attorney for the retirement plan or other personnel who routinely handle the retirement plan's business, this request should be treated as though it were given directly to the plan administrator." Id. (citing Boone v. Leavenworth Anesthesia, Inc., 20 F.3d 1108, 1109-10 (10th Cir. 1994), and McKinsey v. Sentry Ins., 986 F.2d 401, 404-05 (10th Cir. 1993)). The court concluded, "These legal precedents indicate that plaintiff's letters to PDK's counsel may have been proper requests for plan information under 29 U.S.C. § 1024(b)(4)," but that further discovery was needed to determine whether the lawyer to whom plaintiff sent his information requests to was, at that time, serving as the plan administrator's plan counsel or routinely handling the retirement plan's business. Id.[5]

---

[5] The only authority cited by defendant, Jones v. UOP, 16 F.3d 141 (7th Cir. 1994), is inapposite. There, the court held that where the summary plan description stated that the plan was administered by the employer through administrative committee, requests for information had to be made to the administrative committee, in order to begin running of daily penalties for unjustified delay, and it was not sufficient to address requests to *the employer's* legal and personnel departments.

15

Defendant last argues that plaintiff's motion to amend should be denied because plaintiff's proposed amended complaint, if allowed, would cause unnecessary delay and prejudice the Plan. The court, however, is not persuaded that defendant has demonstrated a valid basis for denial of the motion.

Based on the foregoing, it is ordered that plaintiff's motion to amend is granted. Her amended complaint shall be filed within five days of the entry of this order.

SO ORDERED this 5th day of February, 2013.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE